# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| JAMES F. SCOTT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) 1:09-CV-348-PPS-RBC |
| | ) |
| TIMOTHY S. DURHAM, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>OPINION AND ORDER</u>

This matter is before the Court on a joint motion for partial dismissal with prejudice,

pursuant to Rule 41(a)(2), filed by plaintiff James Scott, defendants Donald Lyons, Joan Lyons

and the Donald Lyons Family Trust (the "Lyons Defendants"), defendants Mark Hyman and

Hyman Ltd. Classic Cars (the "Hyman Defendants"), defendant Kruse, Inc., and defendant

Webster Business Credit Corporation [DE 100].  The motion is opposed by defendant Auburn

Automotive Heritage, Inc. (The "Museum") and defendants Timothy Durham and defendant

Diamond Investment, LLC [DE 102, 104 & 126-127].  The Court held oral argument on the

motion on October 27, 2010 [DE 162].  For the reasons discussed below, the motion is

**GRANTED**.

## BACKGROUND

Plaintiff James Scott brought this lawsuit on December 10, 2009 against several parties

involved in the auction of a 1930 Duesenberg automobile, which Scott alleges was rigged,

resulting in his paying an artificially inflated price for the car [DE 1].  According to the second

amended complaint, Durham initially consigned this car to the Museum for the auction

[DE 123].[1]  Some months later, and apparently unrelated to Durham's consignment, Donald

Lyons retained Hyman, as president of Hyman Classic Cars, to help him locate a Duesenberg.

Hyman contacted Durham, who agreed to sell the car to Lyons for $1 million.  But Durham was

concerned about his prior consignment agreement.  So he asked Hyman to "work something out"

with the Museum.

When Hyman met with the Museum's president, Robert Pass, the two agreed to leave the

car in the auction, but have Durham and Lyons sign a side agreement to set the price of the car at

$1 million, irrespective of the amount of the highest bid at auction.  As part of this side

agreement, Durham and Lyons agreed that Durham would pay all the buyer and seller fees owed

to the Museum from the sale.  The Museum, in turn, agreed with Durham to limit those fees to

$50,000.

Scott, unaware of the side agreement, participated in the auction by phone.  He bid

primarily against Hyman, who was present at the auction and bidding on behalf of Lyons, as per

Lyons' agreement with Durham.  Hyman's highest bid was $2.8 million.  But he stopped bidding

at that point, after learning that, contrary to the Museum's promise to Durham, the highest bidder

would have to pay a buyer's premium of 8% of the sale price.

Scott, the highest bidder at $2.9 million, wired the purchase money plus the 8% buyer's

premium ($232,000) to the Museum's account.  According to Scott, Durham then arranged for

those funds to be distributed among Hyman, Lyons and the Museum, with Durham retaining $1

million for himself.

---

[1]This and the following background facts are taken from the allegations in the second
amended complaint.

Some months after Scott filed his initial complaint, he settled his dispute against the Lyons Defendants, the Hyman Defendants, Kruse, which had supplied the bidder registration forms for the auction, and Webster, the owner of a lien against the car, which Durham allegedly had not disclosed when he consigned the car [DE 98]. Pursuant to the settlement agreement with the Lyons Defendants, Scott assigned to Joan and Donald Lyons his claims against the non-settling defendants: Durham, Diamond and the Museum [*Id.*].

Accordingly, on June 1, 2010, Scott and the Lyons Defendants jointly sought leave to amend the complaint, so as to dismiss Scott's claims against the settling defendants, add Joan and Donald Lyons as plaintiffs, and add new claims against the remaining, non-settling defendants [*Id.*]. On the following day, Scott and the settling defendants filed the pending joint motion for Rule 41(a)(2) dismissal, seeking the dismissal with prejudice of Scott's claims against the settling defendants, and the settling defendants' claims against Scott and one another [DE 100].

The remaining defendants objected to the Rule 41(a)(2) motion and requested that, should it be granted, the Court allow the remaining defendants to name the settling defendants as nonparties for purposes of potential allocation of fault under the Indiana Comparative Fault Act [DE 102 & 104]. One of the remaining defendants, the Museum, also requested that the Court require Scott and the settling defendants to respond to the Museum's outstanding discovery requests [DE 102].

Shortly thereafter, on June 16, 2010, all parties represented to the Court that they were in the process of reaching an agreement on both the motion for leave to amend and the pending Rule 41(a)(2) motion [DE 110]. Pursuant to the parties' agreement, the Court granted Scott leave to file the second amended complaint [DE 122], which lists as plaintiffs Donald and Joan

Lyons, as assignees of Scott, drops the settling defendants, and lists only Durham, Diamond and the Museum as defendants [DE 123]. The parties, however, were unable to reach an agreement on the pending Rule 41(a)(2) motion, and the Court permitted the remaining defendants to file supplemental responses to that motion [DE 122].

The Museum's supplemental response opposes the motion on the grounds that (1) dismissal with prejudice would prevent it from pursuing possible claims against the settling defendants under principles of *res judicata*; and (2) the settling defendants do not have standing to seek Rule 41(a)(2) relief because they are not named in the second amended complaint [DE 126]. Durham and Diamond jointly filed a supplemental response that joins the Museum's arguments [DE 127].

## DISCUSSION

Because answers have already been filed in this matter, and the remaining defendants have not stipulated to dismissal, the joint motion for dismissal is governed by Rule 41(a)(2). *See* Fed. R. Civ. P. 41. Under Rule 41(a)(2), an action may be dismissed at the plaintiff's request only by court order, and "on terms that the court considers proper." *Id.* A dismissal under this section is without prejudice unless otherwise stated. Fed. R. Civ. P. 41(a)(2); *see also H.H. v. Indiana Bd. of Special Educ. Appeals*, No. 3:06-CV-551, 2008 WL 1776406, at *1 (N.D. Ind. Apr. 11, 2008). The purpose of the rule is to prevent voluntary dismissals that unfairly affect the opposing party. *See McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985)*; Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971).

The plaintiff carries the burden of demonstrating that voluntary dismissal is warranted. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994). Whether to permit a plaintiff to dismiss an action under Rule 41(a)(2), including whether to impose any conditions on the

dismissal, is left to the discretion of the court. *Mother & Father v. Cassidy*, 338 F.3d 704, 709 (7th Cir. 2003); *Tolle*, 23 F.3d at 177; *FDIC v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992).

But dismissal should be permitted unless the defendant will suffer "plain legal prejudice" as a result. *Wojtas v. Capital Guardian Trust Co.,* 477 F.3d 924, 927 (7th Cir. 2007); *Kovalic v. DEC Int'l, Inc*., 855 F.2d 471, 473 (7th Cir. 1988); *U.S. v. Outboard Marine Corp*., 789 F.2d 497, 502 (7th Cir. 1986). Plain legal prejudice may result from "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Tyco Labs., Inc. v. Koppers Co*., 627 F.2d 54, 56 (7th Cir. 1980) (quoting *Pace v. Southern Express Co*., 409 F.2d 331, 334 (7th Cir. 1969)). Courts have emphasized, however, that these factors are "simply a guide for the trial judge, in whom the discretion ultimately rests." *Id.*; *see also Endo v. Albertine*, 863 F. Supp. 708, 716 (N.D. Ill. 1994). Indeed, "the very concept of discretion presupposes a zone of choice within which the trial court may go either way . . . in granting or denying [voluntary dismissal]." *Outboard Marine Corp.*, 789 F.2d at 502.

The requirement of showing plain legal prejudice applies to cases where, as here, non-settling defendants object to a Rule 41(a)(2) dismissal of settling defendants. *See Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983) ("It would indeed be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent . . . a voluntary dismissal than he would if he were the party being dismissed").

As discussed below, none of the non-settling defendants' objections to the Rule 41(a)(2) motion establishes the plain legal prejudice needed to prevent the requested dismissal with prejudice.

I.      *Res Judicata*

The Museum contends without explanation that dismissal with prejudice of Scott's claims, and the settling defendants' claims against one another, could bar it, under *res judicata*, from pursuing potential claims against the settling defendants [DE 126]. Durham and Diamond join this argument, but, like the Museum, fail to spell out a basis for how *res judicata* might apply to their potential claims against the settling defendants [DE 127].

The doctrine of *res judicata* prevents parties or their privies from relitigating issues that were or could have been raised in another, previous action in which there was a final judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Because this case was brought in federal court, the federal rule of *res judicata* determines whether the doctrine would apply to potential future claims brought by the remaining defendants against the settling defendants. *In re Energy Co-op., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987).

The three requirements for *res judicata* under federal law are: (1) a final judgment on the merits in the first lawsuit; (2) an identity of the causes of actions; and (3) an identity of the parties or their privies. *Cent. States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). If any one of these three requirements is not met, then *res judicata* is inapplicable. *Id.*

The dismissal with prejudice of the claims at issue in the Rule 41(a)(2) motion would satisfy the first requirement of the *res judicata* test. For *res judicata* purposes, a dismissal with prejudice constitutes a final judgment on the merits that bars a second suit between the same parties for the same cause of action. *Golden v. Barenborg*, 53 F.3d 866, 868-69 & 871 (7th Cir. 1995) (stipulation of dismissal with prejudice was final judgment for *res judicata* purposes); *Kraly v. Nat'l Distillers & Chem. Corp.*, 502 F.2d 1366, 1368 (7th Cir. 1974) ("[A] judgment

with prejudice entered upon a settlement or compromise is binding as to the parties and their privies."); *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971); *see also Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000); *In re Energy Co-op., Inc.*, 814 F.2d at 1234-35.

Moreover, claims that the remaining defendants may wish to later assert against the settling defendants would likely satisfy the second—identity of claims—requirement of the *res judicata* test.  "Two claims are one for the purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations."  *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338-9 (7th Cir. 1995); *see also Colonial Penn Life Ins. v. Hallmark Admin. Ins.*, 31 F.3d 445, 447 (7th Cir. 1994).  The remaining defendants do not indicate the potential claims they believe would be barred by *res judicata*.  But any claim arising out of the circumstances of the auction sale of the Duesenberg would likely involve enough of the same core operative facts as the claims the settling parties seek to dismiss to satisfy the "identity of claims" requirement.  *Cf. Brzostowski*, 49 F.3d 338-9 ("A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action.").

But the remaining defendants offer no basis for concluding that the third requirement of *res judicata*—an  identity of the parties or their privies—would be satisfied in this case. Certainly none of the remaining defendants are the same *parties* as any of the settling defendants.  Nor do any of the remaining defendants appear to be in privity with any of the settling defendants.  The Seventh Circuit has found that privity is "a descriptive term for designating those with a sufficiently close identity of interests."  *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998); *see also Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 688 (7th Cir. 1986) ("Privity between parties is established where those parties' interests are so closely aligned that they represent the same legal interests.").

The remaining defendants' briefs do not offer any basis for concluding that privity might exist between any of them and any of the settling defendants. Nor did the remaining defendants explain during oral argument how their potential claims against the settling defendants might be barred by *res judicata*. And it is hard to imagine how a non-settling defendant, who wished to sue one of the settling defendants, would be barred from doing so because the opposing parties' interests were so closely aligned as to satisfy the privity requirement. In any event, the remaining defendants' *res judicata* concern fails to show that the requested dismissal with prejudice would cause them plain legal prejudice.

## II.      Discovery from the Settling Defendants

 The Museum's concern that dismissal with prejudice will prevent it from obtaining discovery from the settling parties also fails to establish plain legal prejudice. The Museum contends that it needs the settling defendants to respond to its outstanding discovery requests, so that it can properly assess its case [DE 102, ¶¶ 10-11]. Of course, this concern is largely mooted by the fact that the Museum has now asserted third-party claims against almost all of the settling defendants. But setting that aside, the Museum's concern is groundless for the additional reason that relevant information in the hands of a non-party is subject to discovery under the Federal Rules. *See* Fed. R. Civ. P. 45.

Thus, even if the settling defendants became non-parties, the Museum could obtain the witnesses and documents it may need from them by subpoena. *See SmithKline Beecham Corp. v. Pentech Pharm., Inc*., 261 F. Supp. 2d 1002, 1007 (N. D. Ill. 2003). Moreover, the fact that the settling defendants may no longer have an incentive to cooperate with their non-settling co-defendants is "the kind of inevitable adverse consequence for the non-settling defendant that the cases make clear does not justify the court in denying a plaintiff's motion to dismiss."

*SmithKline Beecham*, 261 F. Supp. 2d at 1007 (citing *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233-34 (7th Cir. 1983)).

## III.    Standing

The Museum's objection that the settling defendants are non-parties that lack standing to seek Rule 41(a)(2) dismissal is a non-starter [DE 126, ¶ 7].   First, the settling defendants seek Rule 41(a)(2) relief jointly with Scott, the plaintiff, whose standing is unquestioned.  Second, the settling defendants are parties in this suit so long as they are claimants or are facing pending claims.  Thus, the fact that the settling defendants have claims they are seeking to dismiss, itself, establishes their standing to seek dismissal.

Moreover, the Museum has asserted third-party claim against almost all of the settling defendants, including Donald and Joan Lyons [DE 128], who are also named plaintiffs in the second amended complaint [DE 123].  So the Museum's own pleadings undermine its assertion that those entities and individuals are non-parties.

## IV.    Allocation of Fault to Non-parties

Finally, the remaining defendants appear to object to Rule 41(a)(2) relief out of a concern for preserving nonparty defenses under the Indiana Comparative Fault Act [DE 102, ¶ 6; DE 104, ¶ 4].  The Museum, in particular, requests that the settling defendants remain as non-parties for the purpose of allocating fault under that Act [DE 102, ¶ 6].

The remaining defendants thus appear to be concerned that dismissal with prejudice will prevent the settling defendants from appearing on the verdict form as non-parties.  Because this Court is sitting in diversity, state law determines the content of the jury instructions, including the verdict form.  *See Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007); *Simmons, Inc. v.*

*Pinkerton's, Inc.*, 762 F.2d 591, 595 (7th Cir. 1985); *U.S. v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998) ("verdict forms are, in essence, instructions to the jury.").

Indiana law defines a non-party as "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." IC § 34-6-2-88. In a case where there is comparative fault, the Indiana Code requires that the court furnish verdict forms to the jury that disclose "the percentage of fault charged against each party and nonparty" and "the amount of the verdict against each defendant." *See* IC § 34-51-2-11; *see also Caterpillar Logistics Services, Inc. v. Moore Sec., L.L.C.*, No. 4:08-cv-213, 2009 WL 4677039, at *1 (S.D. Ind. Dec. 9, 2009). The statute further provides that "[i]f the evidence in the action is sufficient to support the charging of fault to a nonparty, the form of verdict also shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty." IC § 34-51-2-11.

Accordingly, the statute shows that whether or not the settling defendants are named as non-parties on the verdict form depends on the sufficiency of the evidence, which is unrelated to the resolution of the pending motion. Thus, the remaining defendants' concern as to preserving non-party defenses fails to establish the plain legal prejudice required to support a denial of the pending motion.

**CONCLUSION**

For the foregoing reasons the Court **GRANTS** the joint motion for partial dismissal with prejudice [DE 100], and thus **DISMISSES WITH PREJUDICE** the following claims:

(1) plaintiff James Scott's claims in his amended complaint [DE 6] against the Lyons Defendants, the Hyman Defendants, defendant Kruse and defendant Webster;

(2) defendant Webster's claims in its counterclaim and cross-claims [DE 33] against plaintiff Scott, the Lyons Defendants, the Hyman Defendants and defendant Kruse; and

(3) the Hyman Defendants' claims in their counterclaim and cross-claims [DE 75] against plaintiff Scott, the Lyons Defendants, defendant Kruse and defendant Webster.

**SO ORDERED**.

ENTERED: November 3, 2010                    /s/ Philip P. Simon
                                             PHILIP P. SIMON, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT