UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| JAMES F. SCOTT, *et al.*, | ) |  |
|---|---|---|
| Plaintiffs, | ) |  |
| v. | ) | 1:09-CV-348-PPS-RBC |
| TIMOTHY S. DURHAM, *et al.*, | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

This matter is before the Court on two motions to dismiss relating to third-party claims asserted by defendant Auburn Automotive Heritage, Inc. (the "Museum"). One motion was filed by third-party defendants Donald Lyons, Joan Lyons and the Donald Lyons Family Trust (for simplicity, I will refer to these entities collectively as "Lyons" ) [DE 144]; the other was filed by third-party defendants Mark Hyman and Hyman Properties, Inc. d/b/a Hyman Limited Classic Cars ("Hyman") [DE 145]. For the reasons discussed below, the Court **GRANTS** the motions to dismiss, albeit without prejudice to the Museum's ability to amend its claims against the moving parties.

## BACKGROUND

Plaintiff James Scott sued several parties involved in the Museum's auction of a 1930 Duesenberg automobile, which Scott alleges was rigged, resulting in his paying an artificially inflated price for the car [DE 1]. One of the defendants in Scott's original complaint is the Museum. The Museum responded by bringing the third-party actions described above. According to the Museum, defendant Timothy Durham, the car's original owner, initially

consigned the Duesenberg to the Museum for the auction.[1] Subsequently, Hyman, acting as an agent for Donald Lyons, contacted Durham, who agreed to sell the car for $1 million, notwithstanding Durham's prior consignment agreement. By the terms of the Durham/Lyons scheme, Lyons agreed that Hyman would attend the auction on Lyons' behalf, and be the highest bidder on the car. But whatever the amount of that bid, Lyons would only be obligated to pay Durham $1 million for the car.

Hyman submitted a bidder registration form to the Museum in advance of the auction, which did not reveal anything about Lyons' purchase agreement with Durham. Hyman then attended the auction and bid on the car on behalf of Lyons. Once the bidding reached roughly $800,000, all bids were between Hyman and Scott. Scott was bidding via telephone. Hyman, however, backed out of the agreement to place the highest bid, leaving Scott as the highest bidder at $2.9 million. Scott paid this amount, along with an additional $232,000, to the Museum, for a total of $3,132,000. Pursuant to the illicit Durham/Lyons agreement, $1,000,000 of the sale proceeds went to Durham, and Lyons and Hyman each received $950,000.

At issue in the pending motions to dismiss are the Museum's claims against Lyons and Hyman for actual fraud (Count I), negligence (Count IV) and violation of the Indiana Crime Victims Relief Act ("CVRA"), IC § 34-24-3-1 (Count VI) [DE 128]. In support of its actual fraud count, the Museum alleges that Lyons and Hyman defrauded the Museum by failing to disclose their ownership interest in the car [DE 128, ¶¶ 39-44]. The Museum's negligence claim is based on its contention that the Indiana Administrative Code imposed on Lyons and Hyman a duty to disclose this ownership interest, which those parties breached [*Id.*, ¶¶ 60-63]. As for its

---

[1]This and the following background facts are taken from the Museum's counterclaims, cross-claims and third-party claims [DE 128 at 49-53].

CVRA claim, the Museum alleges that Lyons' and Hyman's actions caused the Museum to suffer pecuniary losses, through violations of Indiana's deception and criminal mischief statutes, thereby triggering the CVRA's remedies for such violations [*Id.*, ¶¶ 73-79].

Lyons and Hyman seek to dismiss these claims, pursuant to Rule 12(b)(6), essentially arguing that each claim requires the existence of a duty to disclose an ownership interest in the car, which they say the Museum cannot show.

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must take the facts alleged in the pleading as true and draw all reasonable inferences in favor of the pleader. The pleading must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. The statement, however, must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**I.     Actual Fraud**

The failure of Lyons and Hyman to disclose an ownership interest in the car is the sole deceptive act supporting the Museum's fraud claim against those parties. The Museum, however, does not point to any special feature of its relationship with Lyons and Hyman that would give rise to a duty to disclose such information. In the absence of such a duty, the Museum's claims for actual fraud against these parties fail.

Under Indiana law, the elements of actual fraud are: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) [which] was relied upon by the complaining party and (v) [which] proximately caused the complaining party injury." *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996); *see also Kesling v. Kesling*, 546 F. Supp. 2d 627, 638 (N.D. Ind. 2008); *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992).

These elements expressly require a misrepresentation. But Indiana law also recognizes that "the failure to disclose all material facts, by a party on whom the law imposes a duty to disclose, constitutes actionable fraud." *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1413-14 (7th Cir. 1986) (quoting *Grow v. Indiana Retired Teachers Cmty.*, 271 N.E.2d 140, 145 (Ind. 1971) (en banc)); *see also Kesling,* 546 F. Supp. 2d at 639; *Indiana Bank & Trust Co. v. Perry*, 467 N.E.2d 428, 431 (Ind. Ct. App. 1984) (omission is actionable where there is a duty to disclose).

But "where there is no duty to speak or disclose facts, silence will not constitute actionable fraud." *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc*., 823 F.2d 1187, 1191-92 (7th Cir. 1987) (quoting *Barnd v. Borst*, 431 N.E.2d 161, 168 (Ind. Ct. App. 1982)). Moreover, "the burden of showing a duty to speak is on the party alleging fraudulent concealment." *Id.*

For purposes of actual fraud, a duty to disclose may arise by virtue of a fiduciary or confidential relationship. *See Kesling,* 546 F. Supp. 2d at 641; *Grow*, 271 N.E.2d at 143; *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998). It may also arise in the context of a buyer-

seller relationship. *See Kesling,* 546 F. Supp. 2d at 638; *Am. United Life Ins.*, 808 N.E.2d at 701; *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994).

The Museum does not allege that it stood in a fiduciary, confidential, or buyer-seller relationship with Lyons and Hyman. Instead, it argues that a duty to disclose arose here from: (1) the "superior knowledge" of Lyons and Hyman as to their ownership interest in the car; (2) those parties' partial disclosures to the Museum by means of Hyman's bidder registration form; and (3) Section 1-1-34(d) of the Indiana Administrative Code, which is an administrative regulation governing the operation of auction houses [DE 161 at 7-8]. None of these arguments, however, is persuasive.

### A. Superior Knowledge

The Museum correctly observes that a duty to disclose can sometimes arise where one party enjoys a position of superiority over another by virtue of knowledge that only it possesses. But the cases that find a duty to disclose arising on this basis have done so in only narrow circumstances, and almost exclusively in the context of buyer-seller relationships. *See Kesling,* 546 F. Supp. 2d at 638; *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994); *but see Am. United Life Ins.*, 808 N.E.2d at 701 (recognizing a bank's duty to disclose to an account holder) (citing *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998)).

And even in a buyer-seller context, a duty to disclose does not necessarily arise. *See Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 247 (Ind. Ct. App. 2010) ("As a matter of course, every buyer/seller relationship likely involves a party who possesses at least some knowledge not possessed by the other, but that fact alone does not mean that one party enjoys a position of superiority over the other so as to create a special duty and a right of reliance.").

5

Cases that find a duty to disclose arising from one party's superior knowledge reason that the duty arises from the trust and reliance that one party must repose in the other. *See Am. Heritage Banco*, 928 N.E.2d at 247 (no duty to disclose in buyer-seller context because no evidence of right to rely); *Scott v. Bodor, Inc*., 571 N.E.2d 313, 324 (Ind. Ct. App. 1991) (fraud occurs where the buyer relies on the seller's statements, and the seller has professed knowledge of their truth); *Peoples Trust and Sav. Bank v. Humphrey*, 451 N.E.2d 1104, 1111 (Ind. Ct. App. 1983) ("concealment becomes fraud only when . . . it appears that either one or each of the parties, in entering into the contract or other transaction expressly reposes a trust and confidence in the other") (quoting *McNair v. Public Sav. Ins. Co. of America*, 163 N.E. 290, 293 (Ind. Ct. App. 1928)); *see also Wells*, 691 N.E.2d at 1251 ("A bank is inherently in a position superior to its checking account holders, who, in order to conduct their business, must depend on the bank to protect the account holder's funds").

The Museum does not allege that it was required to place its trust and reliance on Hyman or Lyons. Nor does it characterize its relationship with those parties in a way that would permit an inference that the Museum had to a right to rely on and trust those parties, as a buyer sometimes does with a seller, or as an account holder does with a bank. And it is hard to see how the Museum could support such a characterization. After all, the Museum merely conducted the auction; it was not a bidder or potential purchaser.

Moreover, the Museum fails to point to any case law suggesting that Indiana courts would recognize a duty to disclose in the context of a bidder-auctioneer relationship. To be sure, the Museum insists that Lyons and Hyman were "far more than just 'attendees and bidders' at the Museum's auction" [DE 161 at 7]. But, without more, this provides no basis for finding that any superior knowledge of Lyons and Hyman gave rise to a duty to disclose here.

B.    **Partial Disclosure**

The Museum next argues that, once Hyman submitted the bidder registration form, he created a partial misrepresentation which Lyons and Hyman had a duty to correct by disclosing an ownership interest in the car [DE 161 at 7-8]. This argument is a nonstarter for a number of reasons.

Indiana law does impose a duty to disclose in cases where it is necessary to correct a partial misrepresentation. *See Thompson v. Best*, 478 N.E.2d 79, 84 (Ind. Ct. App. 1985); *see also Kesling,* 546 F. Supp. 2d at 641-42. In *Thompson*, home sellers told a buyer about the home's sump pump and drainage tiles, as well as isolated water incidents, but failed to add that there was a consistent water problem. *Thompson*, 478 N.E.2d at 81. The buyer discovered the chronic water issues only after moving in. *Id.* In finding that the buyer had presented sufficient evidence of fraud to survive summary judgment, the court observed that "[a]s soon as [the sellers] introduced [the buyer] to the fact of the sump pump and the drainage tiles around the house, it was incumbent upon [the sellers] to *fully* declare any and all problems associated with their function." *Id.* at 84 (emphasis in original). In other words, once a seller tells part of the story, he assumes a duty to disclose the whole truth without concealing material facts. *Id.*; *see also Kesling,* 546 F. Supp. 2d at 641-42; *Enservco, Inc. v. Indiana Securities Div*., 623 N.E.2d 416, 426 (Ind. 1993); *Am. United Life Ins*, 808 N.E.2d at 702-3; *Indiana Bank & Trust Co. of Martinsville, Indiana v. Perry,* 467 N.E.2d 428, 431 (Ind. Ct. App. 1984).

The Museum, however, provides no basis for concluding that Hyman's submission of the bidder registration form gave rise to a duty to disclose here. As with the cases that find a duty to disclose rooted in one party's "superior knowledge," cases that find a duty to correct a partial misrepresentation do so almost exclusively in the context of buyer-seller relationships, where

7

one party must rely on the other's professed superior knowledge or expertise. *See Am. United Life Ins*, 808 N.E.2d at 702-3 (buyer-seller); *Thompson*, 478 N.E.2d at 84 (same); *Indiana Bank & Trust Co. of Martinsville, Indiana,* 467 N.E.2d at 431 (same). But, as I mentioned earlier, the Museum does not allege that it stood in a buyer-seller relationship with Lyons and Hyman. Nor does it attempt to analogize its relationship with those parties to the buyer-seller context. And the Court is not aware of any Indiana authority that would support an extension of the duty to correct a partial misrepresentation from the buyer-seller context to the bidder-auctioneer context here.

What is more, I failed to see how the information disclosed on the bidder registration form, which appears to be the sole basis for the Museum's partial disclosure argument [DE 161 at 8], amounts to a partial misrepresentation. That form does not require the registering bidder to make *any* representations as to his or his principal's possible ownership interest in the items at auction [DE 128-2].[2] Nor does the form reference the car at issue in this case, or any other property to be auctioned [*Id*.]. Indeed, in completing the form, the only information Hyman provided, and was required by the form to provide, was his name and address [*Id*.]. So even if there were a basis for extending the duty to correct a partial misrepresentation beyond the buyer-seller context, to the context here, the Museum's allegation that Lyons and Hyman created a partial misrepresentation is belied by the content of the bidder registration form, on which its partial disclosure argument relies.

---

[2] By contrast, the consignment agreement that Durham completed when he consigned the car to auction provides that the "Seller/Owner warrants that [he] is the sole and only owner of [the car]" [DE 128, ¶ 26 & 128-3 at 3, ¶ 2].

## C. Section 1-1-34(d) of the Indiana Administrative Code

The Museum also fails to show how Section 1-1-34(d) of the Indiana Administrative Code could give rise to a duty to disclose here. In Indiana, auctions and auctioneers are governed by the Auctioneer and Auction Licensing Act. IC § 25-6.1-1-2. This Act governs the creation, membership and powers of the Indiana Auctioneer Commission, which is empowered to administer and enforce administrative regulations governing the operation of auction houses, of which Section 1-1-34(d) is an example. IC 25-6.1-2-5; 812 IAC § 1-1-34(d); *see also Polo Realty Inc. v. Kruse, Inc*., No. 1:10-cv-144, 2010 WL 3038731, at *5 (N.D. Ind. Aug. 2, 2010). On its face, Section 1-1-34(d) appears to provide a remedy for a buyer who unwittingly bids against an undisclosed seller:

> If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the property at the price of the last good faith bid prior to the completion of the sale.

812 IAC § 1-1-34(d).

This provision plainly exists to protect buyers – not auctioneers. Nothing in the plain language of this regulation imposes a duty on sellers to disclose anything to the auctioneer, including any ownership interest in property they intend to bid on. Nor does this regulation expressly prohibit sellers from bidding on property in which they have an ownership interest. On the contrary, it appears to contemplate that such bidding will sometimes occur. Moreover, I could not locate, nor did the Museum point to, any authority finding that Section 1-1-34(d) creates a duty to disclose, or any reference to any Indiana statute or regulation that recognizes such a duty.

* * *

In sum, the Museum fails to establish a common law, statutory or other basis for finding that Lyons and Hyman had a duty to disclose an ownership interest in the car. In the absence of such a duty, the Museum's actual fraud count against those parties fails as a matter of law. *Cf. Kesling,* 546 F. Supp. 2d at 643 (dismissing fraud claim based on failure to disclose because plaintiff lacked basis for duty to disclose); *Concordia Theological Seminary, Inc. v. Hendry*, No. 1:05-CV-285, 2005 WL 3005482, at *3 (N.D. Ind. Nov. 9, 2005) (same).

## II. Negligence

The Museum's negligence claim is also based on the alleged failure of Lyons and Hyman to disclose an ownership interest in the car. The elements of a negligence claim under Indiana law are: "(1) a duty owed to plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind. 2000)). "Absent a duty there can be no negligence or liability based upon the breach." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010).

The duty element of the Museum's negligence claim appears to be based on the contention that Section 1-1-34(d) creates a duty to disclose [DE 161 at 9; DE 128, ¶¶ 61-62]. Lyons and Hyman argue that Section 1-1-34(d) cannot ground the Museum's negligence claim because the Museum is not included in the class of persons Section 1-1-34(d) is intended to protect [DE 164 at 3].

As I noted earlier, Section 1-1-34(d) provides a remedy for buyers who unwittingly bid against sellers. But nothing in that regulation provides a remedy for auctioneers. And, as I also

10

mentioned earlier, Section 1-1-34(d) does not expressly create *any* duties, and certainly not a bidder's duty running in favor of an auctioneer.

In any event, there is another reason why that Section 1-1-34(d) cannot support the Museum's negligence claim. The simple fact of the matter is that Indiana courts do not recognize negligence actions based on duties prescribed by administrative regulations.

It is true that Indiana courts have a long history of recognizing that the violation of a *statutory* duty can ground a negligence action. *Kho v. Pennington*, 875 N.E.2d 208, 211 (Ind. 2007) (collecting cases). Specifically, the "unexcused or unjustified violation of a duty prescribed by statute or ordinance constitutes negligence *per se* if the statute is intended to protect the class of persons in which the plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation." *Vandenbosch v. Daily*, 785 N.E.2d 666, 669 (Ind. Ct. App. 2003); *see also Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157, 1160 (Ind. Ct. App. 1988). Thus, for example, "a landlord may be liable to a tenant because of negligence which arises from the violation of a duty imposed by statute or ordinance." *Id.* at 1160.

But the same is not true of administrative regulations. Unlike statutory violations, the violation of an administrative regulation does not constitute negligence *per se*. *Beta Steel v. Rust*, 830 N.E.2d 62, 73-74 (Ind. Ct. App. 2005); *Vandenbosch*, 785 N.E.2d at 670; *Hodge*, 527 N.E.2d at 1160 n.3. Accordingly, Indiana courts have held that negligence claims fail as a matter of law where the duty element of the claim rests solely on an administrative regulation that the defendant allegedly violated. *See Vandenbosch*, 785 N.E.2d at 670 (landlord's violation of provision of the Indiana Administrative Code was not proper basis for imposing negligence liability because provision was not a statute or ordinance); *Hodge*, 527 N.E.2d at 1160 n. 3 ("appellants' claim of negligence could not survive a motion for summary judgment if the duty

11

element of their claim rested solely upon the existence of an applicable administrative regulation"); *see also Andrews v. Speedway SuperAmerica LLC*, No. 1:09-cv-1242, 2010 WL 2985938, at *5 (S.D. Ind. Jul. 27, 2010) (dismissing negligence claim where duty element was based on provision of Indiana Administrative Code).

Here, the Museum points to no basis for the duty element of its negligence claim other than the alleged violation of Section 1-1-34(d). Because this administrative regulation is not a sufficient basis for the duty element of the Museum's negligence claims against Lyons and Hyman, those claims fail as a matter of law.

### III.    Indiana Crime Victims Relief Act

The Museum's claims against Lyons and Hyman under the CVRA fail because the Museum has not sufficiently alleged that it suffered a "pecuniary loss," as it must to recover under the CVRA.

The CVRA allows a plaintiff who "suffers a pecuniary loss as a result of a violation of IC 35-43" to "bring a civil cause of action against the person who caused the loss . . . ." IC § 34-24-3-1; *see also Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999). To establish a viable claim, "a plaintiff must show a violation of one of the specific code sections and that such violation caused the loss suffered by the plaintiff." *McLemore v. McLemore*, 827 N.E.2d 1135, 1144 (Ind. Ct. App. 2005) (citing *Yoder Grain, Inc. v. Antalis*, 722 N.E.2d 840, 850 (Ind. Ct. App. 2000)). The Museum's CVRA claim is based on Lyons' and Hyman's alleged violations of two provisions of Section 35-43 of the Indiana Code: the criminal mischief statute, IC § 35-43-1-2, and the deception statute, IC § 35-43-5-3 [DE 128, ¶¶ 73-79].

Lyons and Hyman argue that the Museum fails to state a claim under the CVRA because the alleged criminal violations are based on the same allegations underlying the Museum's

already defective fraud claim [DE 146 at 8]. It is true that the Museum's only allegation against those parties is that they violated the criminal statutes by failing to disclose their ownership interest in the car on the bidder registration form [DE 128, ¶ 177], which is the same allegation underlying the Museum's defective fraud claim.

Moreover, the criminal mischief and deception statutes are both anti-fraud statutes. *See ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc*., 429 F. Supp. 2d 1031, 1042 (N.D. Ind. 2006). And some district courts have dismissed CVRA claims where the alleged violations of the deception and criminal mischief statutes rest on defective common law fraud allegations. *See SMC Corp. v. Peoplesoft USA, Inc*., No. 1:00-cv-1095, 2004 WL 2538641, at *6 (S.D. Ind. Oct. 12, 2004) (dismissing CVRA claim because alleged deception statute violation was based on defective fraud claim); *see also F. McConnell & Sons, Inc. v. Target Data Systems, Inc*., 84 F. Supp. 2d 980, 987 (N.D. Ind. 2000).

But the law is unclear on the issue of whether the Museum must meet the elements of common law fraud to state a claim under the criminal mischief and deception statutes. At least one Indiana court has chosen not to read the elements of common law fraud into other fraud crimes defined by statute. *See American Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1117-18 (Ind. Ct. App. 2008) ("The five elements of common law fraud are not found in the statute defining fraud on a financial institution.").

I need not resolve this issue because the Museum's CVRA claim fails for the separate reason that the Museum has not satisfied the "pecuniary loss" element of such claims. For the Museum to be entitled to recovery under the CVRA, it must show a "pecuniary loss" as a result of Lyons' and Hyman's alleged violations of the criminal mischief and deception statutes. IC § 34-24-3-1; *see also Opportunity Knocks, Inc. v. Maxwell*, 618 F. Supp. 2d 920, 927 (N.D. Ind.

13

2009); *Bridgeforth v. Thornton*, 847 N.E.2d 1015, 1028 (Ind. Ct. App. 2006); *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assocs.*, 758 N.E.2d 931, 944 (Ind. Ct. App. 2001). "A pecuniary loss has been described as a 'loss of money, or of something by which money, or something of money value may be acquired.'" *Opportunity Knocks*, 618 F. Supp. 2d at 927 (quoting *American Leasing, Inc. v. Maple*, 406 N.E.2d 333, 335 (Ind. Ct. App. 1980)); *see also Veach v. Sheeks*, 316 F.3d 690, 694 (7th Cir. 2003).

The parties do not address the point, but the Museum has not alleged a pecuniary loss within the meaning of the CVRA. The only losses the Museum says Lyons and Hyman caused are expenses incurred in defending itself in this lawsuit, and the amount of the claims that Scott and other parties have asserted against the Museum [DE 128 at 61]. These, however, are not "pecuniary losses" within the meaning of the CVRA.

The CVRA "does not allow for the consideration of attorney fees as part of the pecuniary losses required to entitle a party to recovery under the statute." *Bridgeforth*, 847 N.E.2d at 1030; *see also Harco*, 758 N.E.2d at 945. The same goes for costs of litigation. *Id.* Moreover, no judgment has been entered against the Museum in this litigation. So at this point in time, the Museum has not suffered any pecuniary loss. *Cf. Veach*, 316 F.3d at 694 (affirming dismissal of CVRA claim because plaintiff, who did not pay any of the judgment levied against him in smalls claims court, suffered losses of time and effort, but not money); *Harco*, 758 N.E.2d at 944 (reversing trial court's award under CVRA because, apart from attorneys' fees and costs of litigation, plaintiff failed to establish actual damages resulting from frivolous claim filed against it). Accordingly, the Museum's CVRA claim against Lyons and Hyman must be dismissed for failure to allege the pecuniary loss required for recovery under that statute.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion to dismiss filed by Donald Lyons, Joan Lyons and the Donald Lyons Family Trust [DE 144], and **GRANTS** the motion to dismiss filed by Mark Hyman and Hyman Properties, Inc. d/b/a Hyman Limited Classic Cars [DE 145]. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the following claims asserted by the Museum against those parties: Count I (actual fraud), Count IV (negligence) and Count VI (violation of the Indiana Crime Victims Relief Act) [DE 128]. The Museum is **GRANTED LEAVE TO AMEND** its pleadings within **30 days** of the date of entry of this Order to address the deficiencies outlined above.

**SO ORDERED**.

ENTERED: January 3, 2011 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT