UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES F. SCOTT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO. 1:09-CV-00348 |
| ) | |
| TIMOTHY S. DURHAM, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is a motion to strike (Docket # 147) filed on October 4, 2010, by Plaintiffs Donald Lyons and Joan Lyons (the "Lyons") as assignees of Plaintiff James Scott, requesting that the Court strike certain affirmative defenses asserted by Defendant Auburn Automotive Heritage, Inc. (the "Museum") in response to Plaintiffs' Second Amended Complaint (Docket # 123). The Museum filed a response to the motion on October 18, 2010 (Docket # 160), and the Lyons replied on October 28, 2010 (Docket # 163).

On January 18, 2011, the Court called for supplemental briefing on the motion to strike. (Docket # 177.) Accordingly, the Lyons and the Museum filed supplemental responses on January 31, 2011 (Docket # 178, 179), and supplemental replies on February 10, 2011 (Docket # 181, 182).

Having now considered the parties' briefs and the relevant law, the Lyons's motion to strike will be GRANTED.

*A. Background*

Plaintiff James Scott sued the Lyons, the Museum, and various other parties after his

purchase of a vintage automobile at the Museum's auction, alleging that the auction was rigged and resulted in his paying an artificially-inflated purchase price.[1] (Docket # 1.) Later, as part of a settlement agreement, Scott assigned his claims against the other Defendants to the Lyons, subject to certain reserved rights. (Second Am. Compl. ¶ 48.)

On August 31, 2010, subsequent to the assignment, the Lyons in their new role as co-Plaintiffs with Scott filed a Second Amended Complaint (Docket # 123), which the Museum timely answered (Docket # 128). Together with its answer, the Museum asserted the following affirmative defenses, which the Lyons now seek to strike:

> 12. The Plaintiffs' claims fail due to the fraud and illegality of Donald D. Lyons and/or Joan L. Lyons.
>
> 13. The Plaintiffs' claims fail due to the fraud and illegality of Mark Hyman, Hyman Properties, Inc. d/b/a Hyman Limited Classic Cars, and/or the Donald D. Lyons Family Trust.
>
> 14. The Plaintiffs' claims fail due to the fraud and illegality of Timothy S. Durham and/or Diamond Investments, LLC.

(Docket # 128 at 47.) The Museum also asserted various counterclaims, cross claims, and third-party claims with its answer, including a claim of actual fraud against the Lyons; Timothy Durham; Diamond Investments, LLC; Mark Hyman; Hyman Properties, Inc.; and the Donald Lyons Family Trust (the "Trust"). (Docket # 128 at 49, 54-55.)

On October 4, 2010, the Lyons, the Trust, Hyman, and Hyman Properties filed a motion to dismiss the Museum's claims against them under Federal Rule of Civil Procedure 12(b)(6). (Docket # 144, 145.) Chief Judge Philip Simon granted the motions on January 3, 2011, dismissing the Museum's claims without prejudice and granting it leave to amend its pleadings.

---

[1] The Court assumes that the reader is familiar with the underlying facts of the case.

(Docket # 175.) On February 20, 2011, the Museum filed its amended counterclaims, cross claims, and third-party claims, including a claim of actual fraud against the Lyons, Durham, Diamond Investments, Hyman, Hyman Properties, and the Trust. (Docket # 180.)

### B.  Applicable Legal Standard

Under Federal Rule of Civil Procedure 12(f), a court may strike "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *See Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc*., No. 05 C 6656, 2007 WL 1238917, at *1 (N.D. Ill. Apr. 25, 2007). A motion to strike serves "a useful purpose by eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case." *United States v. Walerko Tool & Eng'g Corp*., 784 F. Supp. 1385, 1387-88 (N.D. Ind. 1992); *see Ortho-Tain, Inc*., 2007 WL 1238917, at *1. However, "[a] motion to strike is not a favored motion, as it proposes a drastic remedy." *Walerko Tool*, 784 F. Supp. at 1387; *see Ortho-Tain, Inc.*, 2007 WL 1238917, at *1.

A motion to strike "may be granted only if the defense is patently defective and could not succeed under any set of circumstances." *Ortho-Tain, Inc*., 2007 WL 1238917, at *1 (citation and internal quotation marks omitted); *Walerko Tool*, 784 F. Supp. at 1387. "The determination whether to strike material under Rule 12(f) is within the discretion of the trial court." *Logan v. Krupp*, No. 3:08-cv-869 WDS, 2009 WL 2929829, at *1 (S.D. Ill. Sept. 10, 2009) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992)).

### C.  Analysis

The Lyons seek to strike three affirmative defenses (nos. 12, 13, 14) asserted by the Museum pertaining to the alleged "fraud and illegality" of the Lyons, Durham, Diamond

3

Investments, Hyman, Hyman Properties, and the Trust. They assert that the defenses are insufficient, immaterial, and impertinent because they confuse the Lyons's individual identity with their status as Scott's assignees. More specifically, the Lyons contend that because the Museum could not assert the alleged "fraud and illegality" as an affirmative defense against Scott, it cannot serve as a defense against the Lyons, who now "stand in Scott's shoes" as his assignees.

To begin, it is a "well-settled principle of contract law that a valid assignment gives the assignee *neither greater nor lesser rights* than those held by the assignor." *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993) (emphasis added); *Indianapolis-Marion Cnty. Public Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010); *see* 6A C.J.S. *Assignments* § 110 ("Since the assignee's rights are derivative, so that an assignee of a contract occupies the same legal position under a contract as did the original contracting party, he or she can acquire through the assignment no more and no fewer rights than the assignor had, and cannot recover under the assignment any more than the assignor could recover."). That is, "an assignee of a nonnegotiable chose in action generally acquires no greater right than was possessed by the assignor, and simply stands in the shoes of the assignor." 6 AM. JUR. 2D *Assignments* § 108; *see* 6A C.J.S. *Assignments* § 110 ("The assignee acquires all of the rights and remedies possessed by the assignor at the time of the assignment, and takes the obligation, contract, chose, or other thing assigned subject to the same restrictions, limitations, and defects as it had in the hands of the assignor. . . . . In other words, an assignee stands in the shoes of the assignor.").

More specifically on the matter of affirmative defenses, "[b]ecause an assignee acquires

4

no greater rights than was possessed by the assignor, in an action on the claim assigned, the assignee of a chose in action is ordinarily subject to any setoff or counterclaim available to the obligor against the assignor, and to all other defenses and equities that could have been asserted against the assignor at the time of the assignment." 6 AM. JUR. 2D. *Assignments* § 116. Thus, "[i]t is generally stated that the assignee . . . takes [the chose in action] subject to defenses and counterclaims *that were available to the obligor against the assignor*." 4 CORBIN ON CONTRACTS § 892 (1951) (emphasis added).

Consistent with these general principles of assignment, the parties do not dispute that the Lyons, as Scott's assignees, are subject to any affirmative defenses that the Museum could have asserted against Scott, including, for example, the defense of comparative fault.[2] (Docket # 28 at 46-47.) The issue here, rather, is whether an exception to the general principles of assignment applies that would allow the Museum to assert the pre-assignment alleged misconduct of the Lyons, Durham, Diamond Investments, Hyman, Hyman Properties, and the Trust—a defense that has no applicability against Scott—as a defense against the Lyons in their capacity as Scott's assignees.

The relevant exception to the general principles of assignment is articulated in § 336(4) of the Restatement (Second) of Contracts, which provides: "An assignee's right against the obligor is subject to any defense or claim arising from his conduct or to which he was subject as a party or a prior assignee because he had notice." This provision "is somewhat opaque and has not been frequently interpreted." *Palmi v. Metro. Prop. & Cas. Ins. Co.*, No. 975617, 1999 WL

---

[2] The defense of comparative fault is asserted elsewhere in the Museum's list of affirmative defenses (nos. 3 and 4), and thus the Museum does not suggest that it advanced the disputed three defenses (nos. 12, 13, and 14) under a comparative fault theory.

5

1327911, at *4 n.3 (Mass. Super. Feb. 25, 1999); *see, e.g.*, *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1016-17, 1025-26 (10th Cir. 2006); *Fed. Deposit Ins. Corp. v. Butcher*, 660 F. Supp. 1274, 1280-81 (E.D. Tenn. 1987); *Otis v. Arbella Mut. Ins. Co.,* 824 N.E.2d 23, 31-32 (Mass. 2005); *Infinity Ins. Co. v. Worcester Ins. Co.*, No. CV020817023, 2005 WL 941405, at *6 (Conn. Super. Mar. 18, 2005); *State v. Hogg*, 535 A.2d 923, (Md. 1988), *overruled on other grounds by Dawkins v. Baltimore City Police Dept.*, 827 A.2d 115 (Md. Ct. App. 2003).

After examining the authority cited by the parties and conducting independent legal research, the Court concludes that the Restatement's exception, "[a]t its heart, [addresses] the situation in which an assignee who would be barred by his own conduct from pursuing a given claim against the defendant seeks to do so under shelter of an assignment from someone else." *Palmi*, 1999 WL 1327911, at *4 n.3. Stated another way, the exception arises from the principle that "[a]n obligee who is subject to . . . a defense or claim cannot *improve* his position by assigning the right to an assignee who is not subject to the defense or claim and then taking a reassignment." RESTATEMENT (SECOND) OF CONTRACTS § 336 cmt. h (emphasis added). Thus, the exception seemingly addresses a circumstance in which a plaintiff has attempted to "launder" its own misconduct from a claim, by assigning the claim without notice to an innocent purchaser and then taking a reassignment of the claim back from the innocent purchaser. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 336 cmt. h.

Applying this line of reasoning to the instant circumstances, it is readily apparent that the exception articulated in § 336(4) does not apply here. To begin, the purported misconduct of Durham and Diamond Investments does not even fit within the exception at all, since the exception addresses an assignee's *own* conduct. Therefore, it is obvious that affirmative defense

6

no. 14 concerning the purported "fraud and illegality" of Durham and Diamond Investments "could not succeed [against Scott or Scott's claim assigned to the Lyons] under any set of circumstances", *Ortho-Tain, Inc.*, 2007 WL 1238917, at *1, and therefore will be stricken.

Concerning the alleged misconduct of the Lyons and their purported agent Hyman, the Court is not confronted with a situation where the Lyons should arguably be barred by their own conduct from pursuing a claim against the Museum, the *raison d'etre* of § 336(4); indeed, the Lyons *never had a claim* against the Museum in their own capacity. Thus, the Lyons "could not possibly have pursued the claim they now press *until* they obtained the assignment from [Scott]." *Palmi*, 1999 WL 1327911, at *4 n.3 (emphasis added). Prior to the assignment, the claims against the Museum were possessed by Scott, whose interests were *entirely antagonistic* to the Lyons. *Palmi*, 1999 WL 1327911, at *4 n.3. Indeed, the Lyons only obtained the claims by entering into a settlement agreement with Scott in May 2010, in which the Lyons made additional payments and promises to Scott in exchange for the assignment of his claims to them. (Second Am. Compl. ¶ 48.) Thus, this is *not* a case falling within the scope of the exception in which the Lyons attempted to "launder" their misconduct by assigning a claim without notice to an innocent purchaser and then taking the claim back by a reassignment from that innocent purchaser. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 336 cmt. h.

In fact, if the exception articulated in § 336(4) of the Restatement was applied here, it would cause a result wholly inopposite to the general principles of assignment—that a valid assignment gives the assignee "neither greater nor lesser rights than those held by the assignor". *Pettit*, 626 N.E.2d at 447. If the exception were to apply, the Museum could now assert the Lyons's alleged misconduct as a complete defense to the claims assigned from Scott *and* still

7

pursue its third-party claim against the Lyons individually for actual fraud (Docket # 180), creating, in effect, a fortuitous opportunity for the Museum and a perverse result for the Lyons. Under that scenario, "[t]he assignee would be subject to actions not assertable against the assignor, and therefore would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or merely assuming the position of the assignor." *Fed. Deposit Ins. Corp.*, 659 F. Supp. at 1482.

Furthermore, the parties seemingly agree that the dispute is governed by Indiana law, the forum where the auction was held. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, No. 06 C 2092, 2009 WL 2750263, at *2 (7th Cir. Sept. 1, 2009) ("When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind. Ct. App. 1999) (explaining that the choice of law rule for Indiana "calls for applying the law of the forum with the most intimate contacts to the facts"). No Indiana court, however, has ever recognized or applied the exception articulated in § 336(4) of the Restatement. Accordingly, the Court is hard-pressed to predict, as the Museum would have it, that the Indiana Supreme Court would embrace such a rule and such a deviation from the well-recognized principles of assignment law. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (explaining that with respect to negligence and contractual issues, a federal court sitting in diversity is charged with predicting how the relevant state Supreme Court would decide if presented with the identical issue).

In short, the Museum has miscast the "fraud and illegality" of the Lyons, Durham,

8

Diamond Investments, Hyman, Hyman Properties, and the Trust as affirmative defenses, as the defenses are "insufficient" as a matter of law against the Lyons in their status as Scott's assignees. *Walerko Tool*, 784 F. Supp. at 1387-88. The alleged "fraud and illegality" is more appropriately cast as a counterclaim, cross claim, or third-party claim, which, of course, the Museum has already done. (*See* Docket # 180.) Accordingly, "to remove unnecessary clutter from the case" and expedite the proceedings, *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), the Museum's affirmative defenses pertaining to the alleged "fraud and illegality" of the Lyons, Durham, Diamond Investments, Hyman, Hyman Properties, and the Trust (defense nos. 12, 13, and 14) will be STRICKEN.

### *D. Conclusion*

For the reasons stated herein, the motion to strike filed by Plaintiffs Donald Lyons and Joan Lyons as assignees of James Scott (Docket # 147) is GRANTED.

SO ORDERED.

Enter for the 18th day of February, 2011.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge